United States District Court
Southern District of Texas
**ENTERED**
March 27, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAJESTIC OIL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-03149 |
| | § | |
| UNDERWRITERS AT LLOYD'S, LONDON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINON AND ORDER

Plaintiff Majestic Oil, Inc. ("Majestic") claims that wind and rain from Hurricane Harvey damaged its commercial warehouse in Pasadena, Texas. Majestic seeks coverage for repairs to the warehouse's roof under its insurance policy with Defendant Underwriters at Lloyd's, London ("Lloyd's"). Lloyd's denied the claim, citing evidence that excluded causes like pre-existing wear and tear contributed to the damage. Lloyd's contends that, because of this evidence, Texas's "concurrent-causation doctrine" requires Majestic to allocate its losses between covered and excluded causes. Majestic responds with evidence intended to show that Hurricane Harvey caused all of the losses.

Before the Court is Defendant's Motion for Summary Judgment. (Dkt. No. 84). For the reasons below, the Court **DENIES** the Motion.

I.  **BACKGROUND**[1]

    A.  FACTUAL BACKGROUND

In 2014, Majestic purchased a commercial property in Pasadena, Texas. (Dkt. No. 84-3 at 13). The property had multiple structures that Majestic combined into a single interconnected building for use as a warehouse, distribution center, and administrative office. (Dkt. No. 84-2 at 5).

After buying the property, Majestic hired contractor Kim Hamel to renovate the interior. (Dkt. No. 88-1 at 8); (Dkt. No. 84-4 at 21). During this work, Hamel discovered leaks in the building's roof. (Dkt. No. 84-4 at 32–33). So, she engaged roofers to inspect the damage and prepare repair bids. (*Id.* at 33). Some roofers recommended that the roof be replaced. (*Id.* at 34–35). And Hamel even recognized that the pre-existing damage "probably should have [been] fixed." (*Id.* at 39). But Majestic opted for more limited repairs, instructing Hamel to fix the existing leaks but not to replace the entire roof. (*See id.* at 35); (Dkt. No. 88-1 at 9); (Dkt. 84-6) (selected repair bid for $25,000); (Dkt. 84-5) (rejected replacement bid for $91,875). Even so, Hamel and three other Majestic employees confirmed that the roof no longer leaked after the repairs. (Dkt. No. 88-1 at 11–13); (Dkt. No. 88-2 at 7–9, 11); (Dkt. No. 88-3 at 2); (Dkt. No. 88-4 at 2–3).

In 2016, Majestic bought property insurance for the warehouse from Lloyd's. (*See* Dkt. No. 88-5 at 15–16); (Dkt. No. 88-6); (Dkt. No. 88-7 at 10). Before issuing the policy,

---

[1] Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

2

Lloyd's sent an inspector to look at the building. (*See* Dkt. No. 88-6). The inspector found no "roof leakage evident" and noted no other problems with the roof. (*See id.* at 7, 11). Majestic renewed its policy with Lloyd's for April 2017 through April 2018. (*See* Dkt. No. 88-7 at 10).

The policy is a standard-form commercial-property policy.[2] It covers "direct physical loss of or damage to" the property "caused by or resulting from any Covered Cause of Loss," (Dkt. No. 84-1 at 14), where covered cause of loss means "Risks Of Direct Physical Loss unless the loss" is excluded or limited in the policy, (*id.* at 28). Excluded losses include losses caused by "wear and tear," "[c]ontinuous or repeated seepage or leakage of water," or "inadequate . . . [m]aintenance." (*Id.* at 28–31). But "[n]otwithstanding any provision to the contrary," the policy covers losses caused by "[r]ain or wind driven rain which enters the insured building or structure through an opening created by the force of a Named Storm." (*Id.* at 50).

In August 2017, Hurricane Harvey struck the Houston–Pasadena area, bringing heavy rainfall and strong winds. (Dkt. No. 88-8 at 10–11). After Harvey, Majestic employees inspected the building and found water damage and leaks throughout. (Dkt. No. 88-3 at 3); (Dkt. No. 88-4 at 3). Majestic's Operations Manager "saw significant leaks from the ceiling and damage in all of the rooms" that he says "only appeared after Hurricane Harvey." (Dkt. No. 88-4 at 3).

---

[2] The policy's coverage and cause-of-loss forms are standard forms created by the Insurance Services Office. (*See* Dkt. No. 84-1 at 14, 28) ("© ISO Properties, Inc., 2001"); *see also* Ins. Servs. Off., Building and Personal Property Coverage Form CP 00 10 04 02 (ISO Properties, Inc. 2001); Ins. Servs. Off., Causes of Loss—Special Form CP 10 30 04 02 (ISO Properties, Inc. 2001).

After Majestic reported the loss in 2017, (Dkt. No. 88-5 at 4), Lloyd's retained an adjuster and a structural-engineering expert to review the damage, (Dkt. No. 84-2); (Dkt. No. 29 at 11–63). Both concluded that some or all of the damage was pre-existing or not caused by Harvey. (Dkt. No. 84-2 at 1, 11, 13); (Dkt. No. 29 at 13). Indeed, Lloyd's engineering expert concluded that "Hurricane Harvey did not cause any physical damage to the roofs and exteriors at the Property." (Dkt. No. 29 at 13). Lloyd's denied Majestic's claim in August 2018. (Dkt. No. 84-10); (Dkt. No. 88-12 at 2). In the denial letter, Lloyd's explained that it "found no evidence of damage to the exterior of the premises that could be attributable to Hurricane Harvey" and that the interior damage appeared to be "long-standing." (Dkt. No. 88-12 at 2, 4).

In February 2019, Majestic hired an engineer, Gregory Becker, to review the damage. (Dkt. No. 88-9 at 2). Becker eventually concluded that Majestic's claimed losses were "caused solely by Hurricane Harvey" and recommended a total roof replacement. (Dkt. No. 88-20 at 3). Majestic also engaged David Poynor to provide a cost estimate for the repairs. (Dkt. No. 88-13 at 4–5). Poynor said it would cost roughly $942,000 to replace the roof and fix the damage that Becker identified as caused by Harvey. (*Id.* at 6).

## B.  PROCEDURAL HISTORY

In August 2019, Majestic sued Lloyd's for breach of contract, alleging that it wrongfully denied coverage. (Dkt. No. 1). Lloyd's responded that Majestic could not distinguish damage caused by Hurricane Harvey from damage caused by pre-existing wear and tear and other excluded causes. (*See* Dkt. No. 47 at 1–2, 15–22).

4

Both Parties retained experts to evaluate causation. (Dkt. No. 29 at 11–63); (Dkt. No. 88-8). Majestic's expert, Becker, produced his initial report in April 2019. (Dkt. No. 88-8 at 2). While Becker concluded that it was "more likely than not that the observed damage is a result of" Hurricane Harvey, (*id.* at 11), his initial report had an important qualification: Becker said that a January 2017 storm could not be "ruled out as initially contributing to the roof vulnerability" and "may have been a precursor to the observed damage and water intrusion during Hurricane Harvey," (*id.* at 10).

But after his deposition in April 2021, (Dkt. No. 47-14), Becker produced a second report reaching the opposite conclusion, (*see* Dkt. No. 88-11 at 7). Becker reached this conclusion by reviewing new meteorological data showing wind speeds of up to 91 mph near Majestic's property. (*Id.* at 3). Because "[o]ther high winds that showed in the data during January of 2017 [were] less[e]r and less prevalent," Becker concluded that the 2017 storm could be "ruled out." (*Id.* at 7). Becker submitted an affidavit confirming his position that "the damage observed and documented at the Property was caused by Hurricane Harvey." (Dkt. 88-9 at 5).

The court, Judge Lynn Hughes then presiding, struck Becker's second report and related affidavit. (Dkt. No. 53 at 2). The court found that Becker had improperly attempted to "change his opinion from there being multiple potential causes of the damage to [Hurricane] Harvey as the sole cause." (*Id.*). Judge Hughes granted summary judgment to Lloyd's, concluding that Majestic could not allocate its damages between covered and excluded causes of loss. (*Id.* at 3).

5

Majestic appealed. (Dkt. No. 55). The Fifth Circuit vacated and remanded, finding that the court did not give sufficient reasons for excluding Becker's materials under Rule 37(c)(1) of the Federal Rules of Civil Procedure. *Majestic Oil, Inc. v. Certain Underwriters at Lloyd's*, No. 21-20524, 2023 WL 2549892, at *1, *3 (5th Cir. Mar. 17, 2023) (per curiam). And while the Fifth Circuit declined to reach the causation issue, it directed the court on remand to consider whether an intervening decision "breathes life into Majestic's sole causation theory." *Id.* at *4 (citing *Advanced Indicator & Mfg. Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 476–77 (5th Cir. 2022) (per curiam)). The panel explained that this question, "like the admissibility of Becker's Second Report and affidavit," was to be considered anew "once the summary judgment record is properly settled." *Id.*

On remand, and after reassignment to the undersigned, the Court reopened expert discovery and admitted Becker's previously excluded materials. (Dkt. No. 81 at 11); (Dkt. No. 79 at 1). Majestic also submitted revised expert materials, including a third affidavit from Becker stating that Hurricane Harvey was the sole cause of Majestic's claimed losses. (Dkt. No. 84-12 at 364–65). Majestic also submitted a revised damages estimate from Poynor. (*Id.* at 131–215).

With the summary-judgment record now properly settled, Lloyd's has renewed its Motion for Summary Judgment. (Dkt. No. 84). Lloyd's argues that Majestic still cannot meet its burden under Texas's concurrent-causation doctrine to allocate its damages between covered and non-covered causes of loss. (*Id.* at 18–31). Majestic responds that it has produced enough evidence for a reasonable juror to conclude that Hurricane Harvey caused all of its claimed losses. (Dkt. No. 88 at 20–31).

## II.  LEGAL STANDARD

### A.  SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### B.    TEXAS'S CONCURRENT-CAUSATION DOCTRINE

Under Texas's concurrent-causation doctrine, "[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Overstreet v. Allstate Vehicle & Prop. Ins.*, 34 F.4th 496, 498 (5th Cir. 2022) (alteration in original) (quoting *Lyons v. Millers Cas. Ins.*, 866 S.W.2d 597, 601 (Tex. 1993)). "That is, the insured must 'segregate covered losses from non-covered losses.'" *Id.* (quoting *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004)). To satisfy the concurrent-causation doctrine, "[a]n insured may carry its

burden by putting forth evidence demonstrating that the loss came solely from a covered cause *or* by putting forth evidence by which a jury may reasonably segregate covered and non-covered losses." *Advanced Indicator*, 50 F.4th at 477 (emphasis added).

As the Fifth Circuit has recently noted, "[t]here are substantial gaps in the concurrent causation doctrine." *Overstreet*, 34 F.4th at 497; *see also Frymire Home Servs., Inc. v. Ohio Sec. Ins.*, 12 F.4th 467, 469, 471–72 (5th Cir. 2021). In both *Overstreet* and *Frymire*, the Fifth Circuit certified three questions to the Texas Supreme Court about the doctrine's application and accompanying burden of proof. *Overstreet*, 34 F.4th at 497; *see Frymire*, 12 F.4th at 469, 471–72. After certification and acceptance in each case, however, the parties settled. *See Overstreet*, 34 F.4th at 499–500, *certified question accepted* (May 27, 2022), *certified question dismissed* (Sept. 16, 2022); *Frymire*, 12 F.4th at 471, *certified question accepted* (Sept. 10, 2021), *certified question dismissed* (Dec. 3, 2021). The questions certified by the Fifth Circuit therefore "remain unanswered." *Advanced Indicator*, 50 F.4th at 476 n.4 ("Because both *Overstreet* and *Frymire* settled after certification, [the Fifth Circuit's] questions regarding when the doctrine applies and a plaintiff's burden of proof remain unanswered." (italics added)).

One of the certified questions in both *Overstreet* and *Frymire* was, broadly, "whether the presence of any pre-existing damage triggers the concurrent causation doctrine." *Overstreet*, 34 F.4th at 498; *see Frymire*, 12 F.4th at 471. Both cases involved roofs with pre-existing wear-and-tear damage that were later damaged by a storm. *See Overstreet*, 34 F.4th at 498; *see Frymire*, 12 F.4th at 471. Both panels said that Texas law did not clearly answer whether the concurrent-causation doctrine applies in this situation

9

and, if so, what it requires. *See Overstreet*, 34 F.4th at 498; *see Frymire*, 12 F.4th at 471. Since then, nothing has changed.

Despite these unresolved questions, the Fifth Circuit held in *Advanced Indicator* that an insured may survive summary judgment "by putting forth evidence demonstrating that [its] loss came solely from a covered cause." *Advanced Indicator*, 50 F.4th at 477; *see also Majestic Oil, Inc.*, 2023 WL 2549892, at *4 (directing the court to consider whether *Advanced Indicator* "breathes life into Majestic's sole causation theory"). That is, if "a jury could reasonably find that all of [an insured's] loss comes from a covered cause, the concurrent-causation doctrine does not bar recovery." *Advanced Indicator*, 50 F.4th at 477.

### III. DISCUSSION

Because both Parties proceed under the concurrent-causation framework, the Court assumes without deciding that Majestic has the burden of producing evidence that its losses "came solely from a covered cause" or "by which a jury may reasonably segregate covered and non-covered losses." *Id.* If Majestic has this burden, Majestic has met it by producing circumstantial evidence and expert testimony that its claimed losses came solely from Hurricane Harvey. *See id.* A jury might reasonably conclude that when a property goes from *no leaks* to *leaks everywhere* right after one of the most devastating storms in Texas history, the storm—not pre-existing conditions—caused the damage. Majestic's expert testimony reinforces this conclusion. (*See* Dkt. No. 88-20 at 3); *cf. Advanced Indicator*, 50 F.4th at 477 (holding that the insured satisfied its summary-judgment burden where a lay witness and an expert both "testified that the hurricane was the sole cause of [the insured's] loss").

### A.    CONCURRENT CAUSE

Majestic has presented substantial evidence that Hurricane Harvey was the sole cause of its claimed losses. First, multiple witnesses testified that there were no active leaks before Harvey. (*See* Dkt. No. 88-1 at 11–13); (Dkt. No. 88-2 at 7–9, 11); (Dkt. No. 88-3 at 2); (Dkt. No. 88-4 at 2–3). Kim Hamel, who performed the pre-Harvey repairs, testified that "[t]he building didn't leak prior to Harvey, okay. It was solid." (Dkt. No. 88-2 at 9). Majestic's owner confirmed that there were no leaks between the 2016 repairs and Hurricane Harvey. (*See* Dkt. No. 88-1 at 11–13). And two of Majestic's other employees confirmed as much. (Dkt. No. 88-3 at 2); (Dkt. No. 88-4 at 2–3). Even Lloyd's own pre-policy inspection in 2016 found no "roof leakage evident" and noted no other problems with the roof. (Dkt. No. 88-6 at 7,11).

The evidence shows that this changed dramatically after Hurricane Harvey. Immediately after the storm, employees found water damage and leaking throughout the building. (Dkt. No. 88-3 at 3); (Dkt. No. 88-4 at 3). Majestic's Operations Manager, who inspected the property four days after Harvey, found "significant leaks from the ceiling and damage in all of the rooms." (Dkt. No. 88-4 at 3). He attests that the leaks and damage "only appeared after Hurricane Harvey." (*Id.*).

This testimony alone is "some evidence" that Hurricane Harvey caused Majestic's claimed losses. *See Lyons,* 866 S.W.2d at 598, 601 (holding that lay testimony that "damage did not exist before the storm" constituted "some evidence of the extent of damage attributable solely to the windstorm"); *Tri Invs., Inc. v. United Fire & Cas. Co.*, 553 F.Supp.3d 400, 409 (S.D. Tex. 2020) ("[The concurrent-causation burden] is a light one,

which Plaintiff may meet using either circumstantial evidence or expert testimony."); *J.P. Columbus Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-00100, 2021 WL 799321, at *7 (S.D. Tex. Jan. 13, 2021) (same); *Kabir Marina Grand Hotel, Ltd. v. Landmark Am. Ins.*, No. 2:18-CV-00237, 2022 WL 19517466, at *2 (S.D. Tex. Jan. 18, 2022) ("[L]ay testimony has been permitted to support a finding of whether damage was caused by a covered peril, even where the evidence it controverts is an expert opinion.").

But Majestic also supports its sole-causation theory with expert testimony. Majestic's engineering expert, Gregory Becker, conducted a thorough analysis and concluded that Hurricane Harvey was the sole cause of Majestic's claimed losses. (Dkt. No. 88-20 at 3). Becker reached this conclusion by examining the timing of water intrusions, analyzing local weather data, reviewing firsthand historical accounts, and personally inspecting the property. (Dkt. No. 88-8 at 4, 6, 9, 15). And he specifically ruled out certain pre-existing conditions. (*Id.* at 13) ("Older leaks and those related to plumbing or condensation were ruled out as part of this assessment."). Additionally, Becker's supplemental analysis ruled out a January 2017 storm as a potential cause. True, Becker initially thought that the storm could not "be ruled out as initially contributing to the roof vulnerability." (*Id.* at 10). But after reviewing new meteorological data showing 91 mph wind gusts during Harvey less than 900 yards from the property, Becker definitively ruled out the January 2017 storm as a potential contributing cause due to its lower wind speeds. (Dkt. No. 88-11 at 7). Becker now states unequivocally that Majestic's claimed losses were "caused solely by Hurricane Harvey." (Dkt. No. 88-20 at 3). A reasonable juror could conclude from Becker's testimony and the testimony of Majestic's lay

witnesses that Hurricane Harvey caused all of Majestic's claimed losses. *Cf. Advanced Indicator*, 50 F.4th at 477 (holding that the insured satisfied its summary-judgment burden with lay- and expert-witness testimony).

To be sure, just as in *Advanced Indicator*, Lloyd's "offers evidence to the contrary." *Id.* at 476. Its field adjuster found that "the roofs, flashings, and parapet walls [were] in a poor condition due to gradual deterioration of building materials, poor quality prior repairs, and lack of maintenance." (Dkt. No. 84-2 at 6). Lloyd's structural engineer similarly concluded that the building's "roof, exteriors, and interiors have experienced distress and damage caused by age, long-term weathering and deterioration, mechanical impacts, deferred maintenance, and construction defects" and that "aerial and street imagery confirmed that the alleged damage at the Property was present prior to Hurricane Harvey." (Dkt. No. 29 at 13). And even Majestic's own contractor recommended a full roof replacement before Harvey due to significant pre-existing damage, which Majestic declined because it "didn't want to spend that much money." (Dkt. No. 84-4 at 35).

But this conflicting evidence, when viewed in the light most favorable to Majestic, just creates a genuine fact issue for the jury to resolve—it does not entitle Lloyd's to summary judgment. *See Advanced Indicator*, 50 F.4th at 477. This follows what courts throughout the Fifth Circuit have held in similar cases. *See, e.g.*, *Hub Tex., LLC v. Arch Specialty Ins.*, No. 5:21-CV-00180, 2023 WL 11859631, at *12 (N.D. Tex. Mar. 21, 2023) (collecting five district-court cases denying summary judgment on similar facts and

recommending that summary judgment be denied). Accordingly, the Court **DENIES** summary judgment on this issue.

### B.    DAMAGES

Lloyd's also argues that summary judgment is warranted because Majestic's damages expert, David Poynor, did not allocate Majestic's estimated damages between covered and non-covered losses. (Dkt. No. 84 at 22–25). This second argument falls with the first: If Majestic convinces a jury that Harvey was the sole cause of its damage, then there is nothing to allocate. Poynor specifically testified that his estimate "only talks about Hurricane Harvey damage" and "doesn't talk about other damages." (Dkt. No. 88-13 at 7). He reviewed Becker's causation findings and spoke with Becker after his inspection, confirming that his estimate aligned with Becker's conclusions about Harvey-caused damage. (*Id.* at 8). So if the jury accepts Majestic's sole-causation theory, then it may also accept Poynor's damages estimate.

In any event, the relevant inquiry under the concurrent-causation doctrine is the cause of the loss, not its value. *See Fiess*, 392 F.3d at 807–08. While the Court agrees that Poynor's damages estimate is not evidence of causation, Lloyd's does not explain how it is a basis for summary judgment under the concurrent-causation doctrine.[3]

---

[3]   Lloyd's also contends that summary judgment is warranted because "Poynor did not calculate Majestic Oil's damages estimate in a manner that is covered by the Policy." (Dkt. No. 84 at 25). Lloyd's argues that Poynor first calculated damages on a replacement-cost-value basis when the policy excludes this method of calculation unless repairs are actually completed. (*Id.*); (Dkt. No. 84-1 at 27). But, as Lloyd's concedes in the very next paragraph, Majestic's "damages estimate now applies depreciation and is written on an [actual-cost-value] basis." (Dkt. No. 84 at 25). Lloyd's remaining quibbles with Poynor's damages estimate are matters for cross-examination, not summary judgment.

\* \* \*

Texas law still does not give clear answers about when the concurrent-causation doctrine applies. *See Overstreet*, 34 F.4th at 497; *Frymire*, 12 F.4th at 471; *Advanced Indicator*, 50 F.4th at 766 n.4. Even so, the Parties seem to assume that it does. (*See* Dkt. No. 84 at 19–21); (Dkt. No. 88 at 14–17). Because Majestic meets its concurrent-causation burden *if* it has one, the Court need not make an *Erie* guess on the issue in this interlocutory Order. *See Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) ("[T]he Supreme Court has for nearly half a century cautioned federal courts to avoid '[n]eedless decisions of state law'" (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966))); *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 506 (5th Cir. 2012) (recognizing that an order denying summary judgment is interlocutory and does not establish the law of the case or finally resolve any legal or factual issues).

## IV.  CONCLUSION

For the reasons above, Defendant's Motion for Summary Judgment, (Dkt. No. 84), is **DENIED**.

IT IS SO ORDERED.

Signed on March 27, 2025.

                                                                                        **DREW B. TIPTON**
                                                                      **UNITED STATES DISTRICT JUDGE**