United States District Court
Southern District of Texas
**ENTERED**
July 03, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MAJESTIC SYNTHETIC OIL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-03149 |
| | § | |
| UNDERWRITERS AT | § | |
| LLOYD'S, LONDON, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

For five years, this insurance-coverage dispute focused on one issue: causation. As Defendant Certain Underwriters at Lloyd's, London ("Underwriters") acknowledged at docket call, until recently, this "appeared to be a simple concurrent causation case." (Dkt. No. 142 at 4). That's how the case was framed in the pleadings, how it was litigated and appealed, and how it was understood by both the Court and the Parties.

But after the Court denied summary judgment on causation and a trial setting loomed, the case suddenly became about something else entirely: the insured used the name "Majestic Oil, Inc." instead of its registered name "Majestic Synthetic Oil, LLC" in the insurance contract and original pleadings.

That discrepancy prompted motions to dismiss on statutory and constitutional grounds, along with proposed amendments seeking to add a host of new defenses never raised in more than five years of litigation. Plaintiff Majestic Synthetic Oil, LLC ("Majestic") responded with its own proposed amendments, purportedly "clarifying" the

basis for various statutory claims in what had long been a straightforward breach-of-contract dispute.  All of this in a case that should have been ready for trial.

The Court resolved the original discrepancy by substituting "Majestic Synthetic Oil, LLC" as the Plaintiff and real party in interest as required by Federal Rule 17(a)(3). (Dkt. No. 128).  But that substitution left unresolved whether Underwriters should be permitted to add new defenses on the eve of trial—some that were available from the outset, others ostensibly based on the substitution, and still others that are jurisdictional.

The answer to the first category is straightforward: No.  Defenses available from the outset but raised only on the eve of trial should be denied because of undue delay and prejudice.

The second category calls for a slightly different analysis but leads to the same answer: No.  While these defenses arguably respond to the Court's substitution order, they still fail under Rule 15 due to undue delay, bad faith or dilatory motive, and prejudice to Majestic.  Their likely futility under Texas law only reinforces that conclusion.

As for the third category, a separate order will address Underwriters' jurisdictional arguments.  And because Underwriters' proposed amendments are denied, Majestic will not be permitted to open new fronts in this five-year-old dispute.

Before the Court are Defendant's Motion for Leave to Amend Answer, (Dkt. No. 134), and Plaintiff's Motion for Leave to Amend Complaint, (Dkt. No. 143).  For the reasons below, the Court **DENIES** both Motions.

## I.    BACKGROUND

This case arises from a property-insurance claim following Hurricane Harvey. (Dkt. No. 106 at 2–4).  Majestic operated a warehouse and distribution center in Pasadena, Texas, insured under an all-risks policy issued by Underwriters.  (*See id.* at 2–3).  When Harvey struck in August 2017, the property suffered water damage that Majestic attributed to wind-driven rain entering through openings created by the storm.  (*Id.* at 3–4).  Underwriters denied the claim, contending that the damage resulted from pre-existing conditions, wear and tear, and other excluded causes.  (*Id.* at 4).

### A.    FIVE YEARS OF CAUSATION LITIGATION

Majestic sued in August 2019, alleging breach of contract.  (Dkt. No. 1).  From the outset, the case centered on causation under Texas's concurrent-causation doctrine.  (*See, e.g.*, Dkt. No. 47 at 12–21); (Dkt. No. 49 at 12–21); (Dkt. No. 51 at 5–14); (Dkt. No. 106 at 8–15).  That doctrine requires an insured to segregate covered losses from non-covered losses when both covered and excluded perils contributed to the damage.  (Dkt. No. 106 at 8–10).

The litigation proceeded along predictable lines.  Underwriters argued that pre-existing damage, deferred maintenance, and construction defects caused the water intrusion—not Harvey.  (*See generally* Dkt. No. 47).  Majestic countered with evidence that Harvey was the sole cause of the claimed losses.  (*See* Dkt. No. 49 at 15–18).  The Parties presented expert opinions about causation, (Dkt. No. 29) (Underwriters' expert opinions); (Dkt. Nos. 49-5, 49-6) (Majestic's); Underwriters moved for summary judgment on causation, (Dkt. No. 47); and the case went through a full appeal to the Fifth Circuit with

causation-related expert-discovery issues as the focus, *see Majestic Oil, Inc. v. Certain Underwriters at Lloyd's*, No. 21-20542, 2023 WL 2549892 (5th Cir. Mar. 17, 2023) (per curiam).

On remand, this Court reopened discovery, (Dkt. No. 79), and ultimately denied Underwriters' renewed summary-judgment motion on causation, (Dkt. No. 106) (denying Dkt. No. 84). The Court found that Majestic had presented enough evidence for a reasonable jury to conclude that Hurricane Harvey caused all of the claimed losses. (*Id.* at 10–14).

### B.    ENTITY ISSUES EMERGE

Two weeks after the Court denied summary judgment on the concurrent-causation issue, Underwriters moved to dismiss. (Dkt. No. 107). The argument centered on how Majestic identified itself in the insurance contract and litigation. The insurance application and policy listed the insured as "Majestic Oil, Inc." (Dkt. No. 107-2 at 1, 5, 9, 11); (Dkt. No. 107-1 at 9, 11, 13). Majestic also filed this lawsuit using the name "Majestic Oil, Inc." (Dkt. No. 1 at 1). But the actual business entity is "Majestic Synthetic Oil, LLC"; "Majestic Oil, Inc." does not exist as a separate entity. (Dkt. No. 107-3 at 2); (Dkt. No. 123-2 at 4). Majestic contends that "Majestic Oil, Inc." was simply a then-unregistered assumed name used by the LLC. (*See* Dkt. No. 123 at 5–13). Underwriters argues that the discrepancy requires dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. (Dkt. Nos. 107, 138).

Underwriters claims it discovered this problem only recently. (Dkt. No. 107 at 3); (Dkt. No. 107-3 at 1–2). As recounted in the Motion to Dismiss, while "preparing for

trial," counsel "noticed that most of Plaintiff's trial exhibits are not in Plaintiff's (alleged) legal name, which then led to the realization that 'Majestic Oil, Inc.' has never existed." (Dkt. No. 107 at 1, 3). Counsel specifically noticed that many trial exhibits identified the property owner as "Narsi Management[,] LP" rather than "Majestic Oil, Inc.," which prompted an investigation of business records revealing that "Majestic Oil, Inc." does not and has never existed. (*Id.* at 3); (Dkt. No. 107-3 at 1–2).

Yet, the second round of discovery in this case closed on August 18, 2023, (Dkt. No. 79 at 1)—meaning the documents leading to this revelation had been in Underwriters' possession for at least a year and a half before it claims to have first noticed the discrepancy.[1] In fact, there are documents in the record identifying Narsi Management, LP as the property owner as early as 2020, (Dkt. No. 47-3 at 1, 12), and a report by one of Underwriters' inspectors identified the issue as early as 2017, (*see* Dkt. No. 47-2 at 1, 5). But as Underwriters' counsel acknowledged at the May 8, 2025, docket call, "when this came in it appeared to be a simple concurrent causation case." (Dkt. No. 142 at 4–5). "We filed a motion for summary judgment," counsel continued, "[a]nd only recently . . . the Court did not grant that. And so, there's never been a reason for us to— it's never been [in] the posture of indicating that. I'll just put it that way." (*Id.*). Put differently, there had "never been a reason" to notice or raise these new issues until Underwriters could no longer expect a pretrial win on its main defense of causation.

---

[1]    All but one of Majestic's proposed trial exhibits have Bates labels indicating that they were produced during discovery. (Dkt. No. 110-1 at 1–4). The one document missing a Bates label is an expert's CV. (*Id.* at 2).

### C.    THE CURRENT MOTIONS

On May 2, 2025, the Court denied Underwriters' Motion to Dismiss and substituted "Majestic Synthetic Oil, LLC" as the Plaintiff and real party in interest. (Dkt. No. 128) (denying Dkt. No. 107). The Court followed Federal Rule 17(a)(3), which provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.*

But Underwriters and Majestic did not proceed as if the action had been originally commenced by the correct party. Instead, the substitution of Majestic Synthetic Oil, LLC as the real party in interest prompted competing motions to amend.[2] (Dkt. Nos. 134, 143).

Underwriters seeks leave to amend its Answer to add multiple new defenses ostensibly targeting the substituted entity. (Dkt. No. 134). These include ownership-based challenges, contractual-capacity defenses, and jurisdictional arguments based on the original plaintiff's non-existence. (*See* Dkt. No. 144 at 8–9) (citing Dkt. No. 134-1).

---

[2]    In its May 2, 2025, Order, the Court noted that—except to the extent that it affects the Court's jurisdiction—a real-party-in-interest objection is subject to waiver if not timely raised and if the assertion would cause prejudice. (*See* Dkt. No. 128 at 2 n.1) (citing 6A Charles Alan Wright et al., Federal Practice and Procedure § 1554 (3d ed. updated 2025)). Inasmuch as any of Underwriters' proposed amendments are simply reassertions of its real-party-in-interest objection, the Court now expressly finds that—in addition to the amendments failing under Rules 16 and 15—Underwriters has waived this objection. *See In re Signal Int'l, LLC*, 579 F.3d 478, 487–89 (5th Cir. 2009) (affirming waiver of real-party-in-interest objection when raised on the "eve of trial").

Underwriters argues that these defenses only became necessary after the Court's substitution order.  (Dkt. No. 134 at 1–4).

Majestic opposes the Motion, contending that Underwriters unduly delayed in asserting defenses based on facts known for years.  (Dkt. No. 144 at 10–13).  Majestic argues that allowing the amendments would require reopening discovery and substantially delay trial.  (*Id.* at 11).  Majestic also indicated that if Underwriters is allowed to plead "new defenses based on old facts," it would seek to add "common law bad faith and Deceptive Trade Practices Act claims" in response.  (*Id.* at 2).

Indeed, Majestic has already moved to amend its Complaint "to clarify breaches of the Texas Insurance Code" in what had been a breach-of-contract dispute.  (Dkt. No. 143 at 2).  Majestic had "reserve[d]" the right to assert these claims in its live Complaint filed more than five years ago.  (Dkt. No. 11 at 3).  And it now frames its proposed amendments as simply "clarifying the precise provisions of the Texas Insurance Code under which Majestic seeks statutory damages."  (Dkt. No. 143 at 4).  Majestic contends that the underlying facts supporting these claims were fully litigated and subject to extensive discovery throughout the case.  (*Id.* at 2–3).

The Parties will pick a jury on July 28, 2025, and their joint pretrial order—which will govern the issues presented to the jury—is due in less than a month.  (Dkt. No. 139 at 1–2).  Against this backdrop, the Court must determine whether to allow both Parties to introduce new theories and defenses.

## II.     LEGAL STANDARD

"Ordinarily, Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings." *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam).  But "[w]hen a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F.App'x 418, 420 (5th Cir. 2013) (per curiam).  On one hand, "Rule 15 governs motions to amend made *before* the expiration of a scheduling order's deadline." *Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prods., Inc.*, 410 F.App'x 738, 740 (5th Cir. 2010) (per curiam) (emphasis added).  On the other hand, Rule 16(b) governs "when leave to amend would require modification of the scheduling order." *S&W Enters. v. SouthTrust Bank*, 315 F.3d 533, 536 (5th Cir. 2003).  That is, when "a party seeks to amend pleadings in a fashion that would alter a deadline imposed by a scheduling order, Rule 15 is superseded by Rule 16." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 418 (5th Cir. 2021).

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires." *Id.*  While leave is not automatic, Rule 15 does "evince[] a bias in favor of granting leave to amend." *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996).  As a result, "the discretion of the district court is not broad enough to permit denial," unless the court has a "substantial reason to deny leave to amend." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000).  In determining whether leave to amend should granted or denied under Rule 15, courts consider several

factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failures to cure any deficiencies, (4) undue prejudice, and (5) futility of amendment. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

Next, "Rule 16(b) provides that a scheduling order shall not be modified except upon a showing of good cause and by leave of the district judge." *S&W Enters.*, 315 F.3d at 535 (internal quotations omitted). Thus, "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.* at 536. "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). Courts consider four factors in determining whether good cause exists: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (internal quotations and alterations omitted).

## III.  DISCUSSION

Litigants cannot present their real defenses first and then—when those don't prevail at summary judgment—go hunting through the record for new ones. That is what happened here. (Dkt. No. 107 at 1); (Dkt. No. 142 at 4–5). As Underwriters' counsel stated at docket call, until recently, the Parties treated this as a breach-of-contract case about "causation." (Dkt. No. 142 at 4). That is how Underwriters justified denying coverage.

(*See* Dkt. No. 88-12 at 2–4).  That is how the pleadings were framed.  (*See* Dkt. No. 11 at 2–3); (Dkt. No. 15 at 4–7).  That is how expert-discovery issues were litigated.  (Dkt. Nos. 50, 52).  That is how the case was appealed to the Fifth Circuit.  *Majestic Oil, Inc.*, 2023 WL 2549892, at *1–4.  That is how summary judgment was briefed on remand.  (Dkt. Nos. 84, 88, 90).  And that is how the case will be tried.

### A.    UNDERWRITERS' PROPOSED AMENDMENTS

Underwriters' proposed amendments fall into three categories.  First are defenses alleging that Majestic does not own or have an insurable interest in the covered property—defenses that were available from the outset and are based on facts Underwriters has known (or should have known) for years, regardless of any misnomer issues.  (Dkt. No. 134-1 at ¶¶ 18–20).  Second are defenses ostensibly targeting Majestic Synthetic Oil, LLC as the substituted Plaintiff and real party in interest—including lack of capacity and absence of privity—essentially arguing that the LLC is a stranger to the contract.  (*Id.* at ¶¶ 14, 16–17).  Third are jurisdictional challenges, which the Court will address in a separate order.  (*Id.* at ¶¶ 1, 4–5).  For the moment, the Court has a sua sponte obligation to consider its own jurisdiction and does not need a basis in the pleadings.

The Court addresses the first and second categories of proposed amendments under Rules 16(b) and 15(a)(2) below.  But first, it briefly dispenses with Underwriters' claim that it may amend its Answer as a matter of course.

### 1.    Amendment as a Matter of Course

Underwriters argues that it has the right to amend its Answer as a matter of course because the Court's substitution order "had the effect" of granting Majestic's prior

request to amend its Complaint.  (Dkt. No. 134 at 3) (first referencing Dkt. No. 128 (the Court's Order); and then referencing (Dkt. No. 123 at 13–14) (Majestic's request to amend its Complaint)).  This argument fails because a substitution of the real party in interest under Rules 17(a)(3) and 21 does not trigger a new round of pleadings.

Starting with the text, Rule 17(a)(3) expressly provides that, after substitution, "the action proceeds as if it had been originally commenced by the real party in interest."  Fed. R. Civ. P. 17(a)(3).  This language strongly suggests that no new pleading cycle begins. Rule 17(a)(3) also permits parties to cure a real-party-in-interest objection through ratification, *see id.*, which requires no amendment at all, further suggesting that the issues addressed by Rule 17(a)(3) do not trigger the right to file an amended answer as a matter of course.

Underwriters cites no caselaw—and this Court has not found any—for the proposition that a substitution under Rules 17(a)(3) and 21 triggers the right to file an amended answer as a matter of course.  Based on the text of Rule 17(a)(3) and the lack of any caselaw to the contrary, the Court concludes that Underwriters must satisfy the requirements of Rules 16(b) and 15(a)(2).[3]

---

[3]    In any case, even for responsive pleadings amended as a matter of course, "the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint."  *Elite Ent. v. Khela Bros. Ent.*, 227 F.R.D. 444, 446 (E.D. Va. 2005) (collecting cases).  As discussed below, the Court concludes that the proposed amendments that are truly responsive to the substitution of Majestic Synthetic Oil, LLC—as opposed to those based on longstanding ownership issues that existed independent of any misnomer—are likely futile and would fail as a matter of law even if allowed.  *See infra* Section III(A)(3)(e).

### 2. <u>Defenses Based on Ownership</u>

The Court first addresses Underwriters' proposed amendments based on ownership and insurable-interest defenses. (Dkt. No. 134-1 at ¶¶ 18–20). Because Underwriters could have raised these amendments from the outset based on facts it has known (or could have known with reasonable diligence) for years, these amendments fail under both Rule 16(b)'s good-cause standard and Rule 15(a)(2)'s factors.

### a. <u>Rule 16</u>

Although the applicable scheduling order in this case had no deadline for amended pleadings, (*see* Dkt. No. 79), granting leave to amend this close to trial would "require modifying the current scheduling order to allow the Parties sufficient time for briefing and trial preparation," *BMSH I Katy TX, LLC v. Smith Seckman Reid, Inc.*, No. 4:22-CV-00218, 2024 WL 4229312, at *2 (S.D. Tex. Sept. 18, 2024). As a result, Rule 16's more stringent standards apply. *See id.*; *see also, e.g.*, *Carlisle v. Allianz Life Ins.*, 540 F.Supp.3d 567, 571 (E.D. Va. 2021) ("[W]hen a scheduling order does not impose a specific deadline to amend pleadings, Rule 16 nevertheless applies if granting leave to amend would interfere with the timeline set in the applicable scheduling order." (collecting cases)).

Under Rule 16(b), "a scheduling order shall not be modified except upon a showing of good cause and by leave of the district judge." *S&W Enters.*, 315 F.3d at 535 (internal quotations omitted). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). Courts consider four factors: (1) the explanation for the

failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Id.* at 536.

Underwriters has not satisfied the good-cause standard with respect to the proposed amendments based on ownership and insurable-interest defenses. First, Underwriters' explanation for its failure to timely raise these defenses is inadequate. The ownership facts underlying these amendments have been available to Underwriters since before the policy was issued in 2016. (Dkt. No. 144 at 5–6) (first citing Dkt. No. 144-5 at 7; then citing Dkt. No. 144-6 at 5, 11–12; then citing Dkt. No. 144-5 at 6–7; and then citing Dkt. No. 144-2 at 4). Underwriters' inspector noted that the insured was a tenant, not an owner, (Dkt. No. 144-6 at 5), and Underwriters' adjuster confirmed the property-ownership structure in 2017, (Dkt. No. 47-2 at 1, 5). These facts were further developed during discovery. (Dkt. No. 47-3 at 12).

Underwriters argues that these amendments became necessary only after the Court's substitution order. (Dkt. No. 134 at 1–4). But this explanation fails because the ownership facts are independent of any misnomer issues. Whether the case proceeded with "Majestic Oil, Inc." or "Majestic Synthetic Oil, LLC" as Plaintiff, the underlying business entity remained a tenant of property owned by Narsi Management, LP. (Dkt. No. 47-3 at 12); (Dkt. No. 47-2 at 5). Underwriters essentially claims that it could not raise ownership-based defenses against "Majestic Oil, Inc." but somehow must raise those same defenses against "Majestic Synthetic Oil, LLC"—even though neither name refers to the property owner, Narsi Management, LP. In short, from the start of this lawsuit,

Underwriters *could* have asserted that the insured, whatever its correct name, did not own or have an insurable interest in the covered property. But it did not.

Second, the fact that the ownership issues apparently played no role in Underwriters' decision to deny the claim and were raised only after the Court denied summary judgment on Underwriters' main defense suggests that they are of secondary importance. (*See* Dkt. No. 88-12) (citing only causation issues as the reason for denying the claim and making no mention of ownership issues). Third, allowing the amendments would substantially prejudice Majestic, requiring the reopening of discovery and potentially adding new parties on the eve of trial. (Dkt. No. 144 at 11). Fourth, after five years, the Court is not granting any further continuances in this case. It's going to trial.

Because Underwriters' first category of proposed amendments would require modifying the Scheduling Order, and because Underwriters has not shown good cause for its delay in asserting these amendments, the proposed amendments are denied.

### b.    Rule 15

In any case, the proposed amendments based on ownership issues also fail under Rule 15's more permissive standards. In deciding whether to grant leave to amend under Rule 15, courts consider five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies, (4) undue prejudice, and (5) futility. *Jacobsen*, 133 F.3d at 318. Here, factors one, two, four, and five all weigh against allowing the amendments.

i.    Undue Delay

The first factor weighs heavily against Underwriters.  Underwriters seeks to add defenses based on facts it has known (or should have known) since before the policy was issued—facts wholly independent of any misnomer or entity-substitution issues.

In 2016, before issuing the policy, Underwriters sent an inspector to the property. (Dkt. No. 144-6).  His report noted that the "insured is a tenant that moved in March 14,[ ] 2016."  (*Id.* at 5).  And when Majestic filed its claim after Hurricane Harvey, Underwriters' adjuster identified "Narsi Management[,] LP" as the property owner through a Harris County Appraisal District search.  (Dkt. No. 47-2 at 5).

The ownership facts were further confirmed during discovery.  (*See* Dkt. No. 47-3 at 12).  Majestic's corporate representative testified at his December 2020 deposition about the relationship between the entities and confirmed that Narsi Management, LP owned the property. (*Id.*).  And as early as July 2020, Underwriters' counsel demonstrated knowledge of the ownership structure: "there's no dispute that obviously this mentions the—the owner of the property here, correct, Narsi Management[,] LP?"  (Dkt. No. 47-7 at 26–27).

Despite all this, Underwriters never raised ownership-based defenses in its original answer, (*see* Dkt. No. 14), amended answer, (*see* Dkt. No. 15), or during five years of litigation.  That is undue delay.

ii.    Bad Faith or Dilatory Motive

The second factor also weighs against Underwriters.  As Underwriters' counsel stated at the docket call, "when this came in it appeared to be a simple concurrent

causation case" and there had "never been a reason" to raise these issues until the Court denied summary judgment on Underwriters' primary defense. (Dkt. No. 142 at 4–5). The seriatim presentation of theories that could have been asserted at the outset supports a finding of bad faith or dilatory motive under Rule 15. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) (collecting Fifth Circuit cases); *DW Volbleu, LLC v. Honda Aircraft Co.*, No. 4:21-CV-00637, 2024 WL 169569, at *6 (E.D. Tex. Jan. 16, 2024) ("A party's bad faith or dilatory motive can be inferred when it engages in 'tactical maneuver[ing]' . . . by presenting claims and theories seriatim when it has had ample time to investigate its case and present the claims together." (quoting *Wimm*, 3 F.3d at 141)).

### iii.     Repeated Failure to Cure Deficiencies

The third factor weighs in favor of granting the amendment. This is Underwriters' first attempt to raise these defenses, so there is no pattern of repeated failures to cure deficiencies.

### iv.     Undue Prejudice to the Opposing Party

The fourth factor strongly favors denial. The case is set for jury selection in less than a month, with the pretrial order due in less than two weeks. (Dkt. No. 139 at 1–2). Majestic has indicated that if Underwriters is permitted to add these ownership-based defenses, it would seek to add "common law bad faith and Deceptive Trade Practices Act claims based on misrepresentations regarding the policy" and potentially "interplead the property owner, Narsi Management, LP, as a third-party beneficiary." (Dkt. No. 144 at 2, 11). These claims could potentially have a basis in Texas law. *See State Farm Mut. Auto.*

16

*Ass'n v. Cook*, 591 S.W.3d 677, 680 (Tex. App.—San Antonio 2019, no pet.) ("An insurance company owes its insured a duty of good faith and fair dealing." (citing *Arnold v. Nat'l Cty. Mut. Fire Ins.*, 725 S.W.2d 165, 167 (Tex. 1987))); *Ramirez v. GEICO*, 548 S.W.3d 761, 772 (Tex. App.—El Paso 2018, pet. denied) ("An affirmative misrepresentation of insurance coverage may give rise to claims under the [Deceptive Trade Practices Act].").

This would fundamentally alter the case and require substantial additional discovery on the eve of trial. Generally, "[c]ourts in this circuit have found prejudice where amendments would 'delay trial, restart a case at an earlier stage, or otherwise unfairly limit a [party's] ability to present [its] case at trial.'" *County of Harris v. Eli Lilly & Co.*, No. 4:19-CV-04994, 2021 WL 4427242, at *3 (S.D. Tex. Sept. 27, 2021) (first quoting *Robles v. Archer W. Contractors, LLC*, No. 3:14-CV-01306, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015); and then citing *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008)). Allowing Underwriters to inject ownership-based defenses into what has been a causation-focused case with trial set in two months would cause exactly this type of prejudice.

### v.    Futility of Amendment

The Court would reject the amendments on the strength of the first three factors alone; however, the Court also notes that the proposed defenses—even as alleged— would be unlikely to survive a dispositive motion at this stage of the litigation. *See English v. Tex. Farm Bureau Cas. Ins.*, No. 6:17-CV-00323, 2020 WL 10316672, at *4 (W.D. Tex. Dec. 9, 2020) ("Proposed amendments are clearly futile if they would not survive a dispositive motion."). Despite years of litigation and two discovery periods, Underwriters does not

17

support its first category of proposed defenses with specific factual allegations. (*See* Dkt. No. 134-1 at 6–7). And where an insurer is aware of facts that would negate coverage before issuing the policy but issues the policy anyway, a defense based on those facts is likely waived. *See Penn-Am. Ins. v. Zertuche*, 770 F.Supp.2d 832, 846 (W.D. Tex. 2011); *Kirk v. Kemper Invs. Life Ins.*, 448 F.Supp.2d 828, 832 (S.D. Tex. 2006). What's more, under Texas law, non-owners can have insurable interests in property. *See Valdez v. Colonial Cnty. Mut. Ins.*, 994 S.W.2d 910, 914 (Tex. App.—Austin 1999, pet. denied) ("An insurable interest exists when the insured 'derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction.'" (quoting *Smith v. Eagle Star Ins.*, 370 S.W.2d 448, 450 (Tex. 1963))); *see also* 3 Jordan R. Plitt et al., Couch on Insurance § 42:52 (3d. ed. updated 2024) ("As a general rule, the lessee maintains an insurable interest in the leased property . . . .").

\* \* \*

The combination of undue delay, dilatory motive, and prejudice to Majestic warrants denying these proposed amendments, even under the more lenient standards of Rule 15. Underwriters thus cannot show that these eve-of-trial amendments are justified under Rule 16 or 15, and they are therefore denied.

### 3.   Defenses Targeting the LLC

The second category of proposed amendments includes those suggesting that Majestic Synthetic Oil, LLC has no relationship to the contract. (Dkt. No. 134-1 at ¶¶ 14, 16–17). The Court will assume without deciding that Underwriters' second category of proposed amendments satisfies Rule 16(b)'s good-cause standard because these defenses

are at least arguably responsive to the Court's substitution of Majestic Synthetic Oil, LLC as the real party in interest.  (Dkt. No. 128); (Dkt. No. 134 at 1–4).  Even still, these amendments fail under Rule 15(a)'s more liberal standard.

a.     Undue Delay

While the Court's May 2, 2025, substitution order provides some explanation for the timing of these amendments, (Dkt. No. 128), the delay analysis is complicated by evidence of Underwriters' earlier knowledge of the LLC structure and, again, by the fact that the documents leading to this revelation were available years ago, (*see* Dkt. No. 144-6 at 5); (Dkt. No. 47-2 at 5–6); (Dkt. No. 47-3 at 12); (Dkt. No. 47-7 at 26–27).  Majestic's corporate representative testified at his December 2020 deposition that the entity's correct legal name was "Majestic Synthetic Oil, LLC."  (Dkt. No. 47-2 at 6).  This testimony provided notice more than four years ago of the actual business entity's name and corporate form.

What's more, though Underwriters claims to have only recently connected the dots while "preparing for trial," (Dkt. No. 107 at 3), the underlying documents that led to this revelation were produced during discovery that closed on August 18, 2023, (Dkt. No. 79 at 1)—meaning they had been available for at least a year and a half.  That Underwriters began "preparing for trial" by carefully reviewing the record only after the Court denied summary judgment does not justify raising new issues.  *Lewis v. Nereus Shipping*, No. 2:17-CV-17392, 2018 WL 6040226, at *2 (E.D. La. Nov. 19, 2018) ("Waiting until trial looms to engage in activities scheduled earlier is not an excuse for an untimely

19

motion."). Nor does connecting the dots during trial preparation provide a valid basis to amend pleadings. If it did, parties could always amend their pleadings on the eve of trial.

To be sure, Majestic also bears responsibility for this confusion. Majestic filed this lawsuit using a non-existent entity name, (Dkt. No. 1), and did not file an assumed-name certificate until April 28, 2025, (Dkt. No. 123-8 at 2–3). Even so, Majestic's missteps do not excuse Underwriters' own delay in raising defenses based on facts it has known or could have discovered through reasonable diligence. The five-year delay in asserting these defenses, even accounting for the substitution, weighs against granting leave to amend.

### b.    Bad Faith or Dilatory Motive

This factor weighs against Underwriters for substantially the same reasons as above. *See supra* Section III(A)(2)(b)(ii). Bad faith or dilatory motive can be inferred from the fact that the acknowledged impetus for raising these issues was the Court's denial of summary judgment on Underwriters' primary defense. (Dkt. No. 142 at 4–5). Waiting until one theory is rejected at summary judgment to urge others is precisely the sort of seriatim presentation of issues from which bad faith can be inferred. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) ("[W]e have upheld the denial of leave to amend when the moving party . . . attempted to present theories of recovery seriatim to the district court." (citation modified)).

### c.    Repeated Failure to Cure Deficiencies

Underwriters has not previously attempted to raise these specific defenses, so there is no pattern of repeated failures to cure deficiencies.

d.     Undue Prejudice to the Opposing Party

This factor strongly weighs against amendment.   Allowing these amendments
would require Majestic to defend against entirely new theories of defenses mere weeks
before trial.   Majestic would need to conduct additional discovery on the relationship
between the LLC and the insurance contract, and the amendments, if permitted, would
potentially require another round of summary-judgment motions.  (*See* Dkt. No. 144 at 2,
11–12).   Again, "[c]ourts in this circuit have found prejudice where amendments would
'delay trial, restart a case at an earlier stage, or otherwise unfairly limit a [party's] ability
to present [its] case at trial.'"   *County of Harris*, 2021 WL 4427242, at *3 (first quoting *Robles*,
2015 WL 4979020, at *3; and then citing *Fahim*, 551 F.3d at 349).

e.     Futility

As with the first category of proposed amendments, the Court would reject
Underwriters' second category of proposed amendments on the strength of the first three
Rule 15 factors alone.    However, Underwriters' second category of proposed
amendments would also likely be futile under Texas's misnomer doctrine.

"A misnomer occurs when a party misnames itself or another party, but the correct
parties are involved."   *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 325 (Tex. App.—Dallas
2014, pet. denied) (quoting *In re Greater Houst. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323,
325 (Tex. 2009) (per curiam) (orig. proceeding)).   "Courts will allow parties to correct a
misnomer so long as no one was misled by the mistake."   *Id.* (citing *In re Greater Houst.
Orthopaedic Specialists, Inc.*, 295 S.W.3d at 325).   Texas courts analyzing misnomer issues
in a contract look at three considerations: (1) was the other party misled by the fact that

21

the contract named the wrong entity; (2) is the correct party's identity substantially apparent from the contract; and (3) whether the parties intended and believed the misnamed party to be a contracting party. *See id.* at 330; *Aus. Tapas, LP v. Performance Food Grp., Inc.*, No. 03-18-00680-CV, 2019 WL 3486574, at *2 (Tex. App.—Austin Aug. 1, 2019, no pet.) (analyzing the same three considerations).

The Dallas Court of Appeals' analysis in *AmeriPath v. Hebert* is instructive. 447 S.W.3d 319. There, the employer "misnamed itself" in an employment agreement by adding a word to its corporate name. *Id.* at 331, 334. The correct entity name was "DFW 5.01(a) Corporation," but the contract listed "AmeriPath DFW 5.01(a) Corporation," a non-existent entity. *Id.* The court found that this misnomer did not invalidate the contract, concluding that "the parties were indifferent to the correct name of the 'Company' . . . until mid-litigation" and that there was no "evidence that [the employee] was treated differently—or conducted himself differently—than he would have had [the employer] been properly named." *Id.* at 331. The court then proceeded through the three misnomer considerations and concluded that each supported the validity of the contract. *Id.* at 331–34.

So too here. First, Underwriters has not alleged in its proposed amended answer that it was misled by any entity misnomer. And for good reason. This is a *property* policy. (Dkt. No. 84-1 at 14). It covers a specific building and its contents at 102 S. Shaver Street in Pasadena, Texas. (*Id.* at 11). There is no allegation that the insured's correct legal name or particular corporate form played any role in Underwriters' decision to insure the building or affected the Parties' actual, real-world business relationship in any

meaningful way.  Thus, as in *AmeriPath*, there is nothing to suggest that Underwriters "conducted [itself] differently" than it "would have had [Majestic] been properly named" in the insurance policy.  447 S.W.3d at 331.  Instead, it appears that the Parties to this property-insurance contract were "indifferent" to Majestic's correct name or corporate form "until mid-litigation."  *Id.*; (*see* Dkt. No. 107 at 1); (Dkt. No. 142 at 4–5).  Underwriters has not—and likely could not—plausibly allege that it was misled by the misnomer.

Second, as in *AmeriPath*, Majestic Synthetic Oil, LLC's identity is substantially apparent from the actual name listed on the contract and the contract as a whole.  In *AmeriPath*, the court held that the actual party's name, "DFW 5.01(a) Corporation," was substantially apparent from the named listed on the contract, "AmeriPath DFW 5.01(a) Corporation," because "the only true difference in the identification of the parties [was] the addition of the single word."  447 S.W.3d at 331.  Here, the only difference between the correct name, "Majestic Synthetic Oil, LLC," and the name listed on the contract, "Majestic Oil, Inc.," is the omission of a single word and the corporate-form designation. *Compare* (Dkt. No. 84-1 at 11) *with* (Dkt. No. 109-3).  Texas courts have also applied the misnomer doctrine to corporate-form designations.  *See Aus. Tapas, LP*, 2019 WL 3486574, at *3 (correcting misnomer where "Austin Tapas, LP" was used instead of correct name "Austin Tapas, LLC"); *Bradley J. Fish, Inc. v. Lesar Elec. & Design LLC*, No. 01-19-00064-CV, 2020 WL 4589758, at * 5 (Tex. App.—Houston [1st Dist.] Aug. 11, 2020, no pet.) (finding no fact issue about contractual obligations despite confusion over corporate form when contract omitted "LLC" from counterparty's name); *see also Tex. Elec. Serv. Co. v. Com. Standard Ins.*, 592 S.W.2d 677, 683–84 (Tex. App.—Fort Worth 1979, writ ref'd n.r.e.).

Majestic Synthetic Oil, LLC's identity is also substantially apparent from other aspects of the contract.  The policy lists the same business address for Majestic Oil, Inc. as Majestic Synthetic Oil, LLC's registered address, (*see* Dkt. No. 144-8 at 2); (Dkt. No. 144-9 at 2–3), which is different from the warehouse address, (*see* Dkt. No. 144-8 at 14).  And no one disputes that the insured property listed in the policy is the warehouse where Majestic Synthetic Oil, LLC conducted its business operations.  (Dkt. No. 144-8 at 14). Thus, as in *AmeriPath*, it is substantially apparent from the insurance contract, public filings, and the pleadings that, despite the misnomer, the instrument refers to Majestic Synthetic Oil, LLC and not some other entity.

Third, the pleadings and the contract show that both Parties intended and believed the insured to be the actual business entity operating at the covered property, "not a non-existent entity."  *AmeriPath*, 447 S.W.3d at 334.  The court in *AmeriPath* emphasized that "the most significant evidence" of the parties' intent was that "the fundamental promises made by the Company in that agreement were performed by [the correctly named entity]."  *Id.* at 332.  "The payment of the premium by the insured and the assumption of a specified risk by the insurer are the essential elements of the contract of insurance."  *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 658 (Tex. 2005) (orig. proceeding) (quoting 5 Jordan R. Plitt et al., Couch on Insurance § 69:2 (3d ed. 1996)).  The insurance policy states that it is "in consideration of the premium specified herein" and reflects a premium payment of $15,800.  (Dkt. No. 144-8 at 2, 8).  Underwriters has never alleged a defect in payment and does not allege a payment defect in its proposed amended answer.  (Dkt. No. 134-1).  Because a non-existent entity cannot pay money, the contract thus reflects

that the existent business entity operating at the covered property—Majestic Synthetic Oil, LLC—performed the "fundamental promises" made in the insurance policy and that Underwriters accepted this performance. *AmeriPath*, 447 S.W.3d at 332. As in *AmeriPath*, Majestic Synthetic Oil, LLC's performance of the insured's "fundamental promise[]" in the insurance contract is "the most significant evidence" that the Parties intended the insurance policy to be between Underwriters and the existent business entity Majestic Synthetic Oil, LLC. *See id.*

The conclusion in *AmeriPath* applies directly here: "In drafting the [contract], [Majestic] misnamed itself, but it is clear the parties to the [contract] were [the correct parties], not a non-existent entity." 447 S.W.3d at 334. Because all three considerations weigh against finding that any misnomer invalidated the insurance contract, Underwriters' proposed contractual defenses based on entity misnomer would likely be futile under Texas law. This futility weighs against Underwriters and reinforces the Court's conclusion to deny the proposed amendments based on the other three Rule 15 factors.

\* \* \*

As Underwriters puts it in its opposition to Majestic's proposed amendments: "This case has been on file for over 5½ years and is just a few weeks from trial." (Dkt. No. 148 at 1). Underwriters itself recognizes that substantive amendments at this stage fail under Rule 15 because they are "unduly delayed"; the Parties have had "many opportunities over multiple years to seek the relief [they are] seeking now"; and eve-of-

trial amendments will "unduly prejudice [the opposing party] at the upcoming trial of this matter which is set to begin in 34 business days." (*Id.* at 12). The Court agrees.

These entity-name issues emerged from counsel's review of documents while "preparing for trial"—not from any confusion in the Parties' actual business dealings. (Dkt. No. 107 at 3). Underwriters didn't complain about the name on the insurance policy until litigation, and it has never complained about the name on the premium checks. Instead, this case has always been about causation.

Litigants cannot test one theory at summary judgment, then scour the record for new theories when the first falls short. The Court denies Underwriters' proposed amendments. A separate order will address Underwriters' jurisdictional challenges.

### B.    MAJESTIC'S PROPOSED AMENDMENTS

Next are Majestic's proposed amendments. Majestic seeks to amend its Complaint to add a host of statutory claims to what has been a breach-of-contract case. (Dkt. No. 143 at 3–4); (Dkt. No. 143-5 at 4). Majestic claims that it is just "[c]larifying" these statutory violations, (Dkt. No. 143 at 4, 7), because it had reserved the right to bring these claims in its Complaint, (*see id.* at 1–2) (citing Dkt. No. 11 at 3); (Dkt. No. 11 at 3) ("[Majestic] reserves all rights to amend to include extracontractual claims . . . .").

This is unpersuasive. "'Reserving the right' to plead a claim is not the same as actually pleading a claim." *Black Farmers & Agriculturists Ass'n, Inc., v. Hood*, No. 3:13-CV-00763, 2014 WL 935147, at *12 (S.D. Miss. Mar. 10, 2014); *Growtech Partners v. Accenture LLP*, 118 F.Supp.3d 920, 942–43 (S.D. Tex. 2015) (noting that a similar argument "fail[ed] to recognize that 'a reservation of rights is not an assertion of rights.'" (quoting *Hooper v.*

*Advance Am.*, 589 F.3d 917, 923 (8th Cir. 2009)); *cf. Tellez v. Madrigal*, 292 F.Supp.3d 749, 760 (W.D. Tex. 2017) (noting that reserving the right to arbitrate "is not comparable to asserting the right").

Majestic alleged in its live Complaint that Underwriters' conduct "*may* have been in bad faith . . . [or] violated statutory requirements" but that further "[d]iscovery [was] needed to ascertain whether and the extent to which the Insurer is liable for extracontractual claims." (Dkt. No. 11 at 3) (emphasis added). In that case, the appropriate time to "clarify" any potential extracontractual claims would have been after the close of the two discovery periods in this case—not eight days after Majestic announced that it was ready for trial. (Dkt. No. 142 at 3). For many of the same reasons that Underwriters' amendments fail, Majestic's proposed amendments must also be denied.

### 1.    <u>Rule 16</u>

Majestic's proposed amendments require modification of the scheduling order because they would necessitate additional discovery and dispositive-motions practice on the eve of trial. Majestic must therefore show good cause for its delay in seeking these amendments. *See S&W Enters.*, 315 F.3d at 535. It has not.

First, the core facts underlying Majestic's proposed claims have been available since its insurance claim was denied in 2018. (*See* Dkt. No. 143 at 2–3). Majestic had two full discovery periods to investigate and develop these claims. (Dkt. Nos. 21, 79). Despite this, Majestic waited until eight days after telling the Court it was "ready for trial" to seek these amendments. (Dkt. No. 142 at 3); (Dkt. No. 143). Majestic offers no reason for this

delay other than its view that Underwriters has "long been on notice" of the potential changes.  (Dkt. No. 143 at 4).  But the timing of the proposed amendments and Majestic's other filings point to a more likely explanation: the amendments are a response to Underwriters' proposed changes.  (*See* Dkt. No. 144 at 2, 11) (indicating that Majestic would assert additional extracontractual claims if Underwriters were permitted to raise new defenses).  "But leave to amend is not a tit for tat," *Spolnik v. Guardian Life Ins.*, 94 F.Supp.2d 998, 1009 (S.D. Ind. 2000), and the Court has already denied Underwriters' proposed amendments.

Second, Majestic characterizes the proposed changes as "minimal" and claims that they do "not substantively change the relief requested."  (Dkt. No. 143 at 5–6).  If that is true, then the amendments are too minor to justify disrupting the trial schedule.  If it is not, and the amendments would materially alter the case, then allowing them now would unfairly prejudice Underwriters.

Third, the prejudice from any material amendments would be substantial.  Adding extracontractual claims would require new discovery into claims-handling practices and potentially another round of dispositive motions.  *See Hansen v. State Farm Lloyds*, No. 4:22-CV-03833, 2025 WL 963079, at *4–9 (S.D. Tex. Mar. 28, 2025) (explaining the distinct analyses required for these claims and granting summary judgment on some, but not all, of the extracontractual claims).  With jury selection rapidly approaching, Underwriters would be forced to defend against new theories without adequate time to prepare, and the Court might have to entertain a fourth round of summary-judgment briefing.

Fourth, after nearly six years of litigation and multiple continuances, the Court will not grant further continuances to accommodate last-minute amendments. This case has already been continued several times, and the Parties have had ample opportunity to develop their claims and defenses. *See S&W Enters.*, 315 F.3d at 537 (recognizing that district courts have the authority to manage their dockets and that, as a result, the decision to grant a continuance lies in the "judge's sound discretion").

Because Majestic cannot show good cause under Rule 16(b), its proposed amendments are denied.

### 2.    <u>Rule 15</u>

Even under Rule 15(a)'s more lenient standard, Majestic's proposed amendments fail. Many of the same facts that defeat good cause under Rule 16(b)—undue delay, strategic motive, and substantial prejudice—also disfavor amendment under Rule 15(a). And many of the same Rule 15 factors that weighed against Underwriters' proposed amendments apply with equal or greater force to Majestic's. *See supra* Section III(A)(2)(b). Majestic's five-year delay in asserting claims based on facts available since 2018— combined with the eve-of-trial timing and the need for additional discovery—strongly supports denying leave to amend. The Court finds that the other Rule 15 factors do not outweigh the delay, motive, and prejudice factors.

## IV.    CONCLUSION

Underwriters cannot raise new defenses based on facts it has known or could have discovered through reasonable diligence for years just because its primary causation

defense failed at summary judgment.  Likewise, Majestic cannot add statutory claims that it reserved but declined to pursue for nearly six years.

Both Parties' last-minute efforts to reshape this case constitute undue delay and a dilatory motive and would cause substantial prejudice if permitted.  The Court therefore **DENIES** both Defendant's Motion for Leave to Amend Answer, (Dkt. No. 134), and Plaintiff's Motion for Leave to Amend Complaint, (Dkt. No. 143).

IT IS SO ORDERED.

Signed on July 3, 2025.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**