United States District Court
Southern District of Texas
**ENTERED**
September 30, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MAJESTIC SYNTHETIC OIL, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:19-CV-03149** |
| | § | |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. W1B527170201,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

In August 2017, Hurricane Harvey struck Pasadena, Texas, damaging a warehouse and distribution center (the "Property") operated by Majestic Synthetic Oil, LLC ("Majestic"). The Property was insured under an all-risks policy issued by Certain Underwriters at Lloyd's, London, Subscribing to Policy No. W1B527170201 ("Underwriters"). Majestic claimed that wind-driven rain entered through storm-created openings and caused water damage. Underwriters disagreed, attributing the damage to pre-existing conditions, wear and tear, and other excluded causes, and denied the claim.

Pending before the Court are Majestic's Motion for Partial Summary Judgment, (Dkt. No. 217), and Underwriters' Motion for Summary Judgment regarding Contract Formation, (Dkt. No. 218). For the following reasons, the Court **GRANTS** Majestic's Motion, (Dkt. No. 217), and **DENIES** Underwriters' Motion, (Dkt. No. 218).

## I. BACKGROUND[1]

The Court has previously explained the extensive factual and procedural background of this case in its July 3, 2025, Order, (Dkt. No. 154), and incorporates it by reference. In that Order, the Court denied Underwriters' Motion for Leave to Amend Answer, (Dkt. No. 134), and Majestic's Motion for Leave to Amend Complaint, (Dkt. No. 143); (Dkt. No. 154). On July 17, 2025, the Court denied Underwriters' Supplemental Motion to Dismiss under Rule 12(b)(1) for Lack of Subject-Matter Jurisdiction, (Dkt. No. 138); (Dkt. No. 173).

In February 2026, the Parties filed cross-motions for summary judgment regarding contract formation and the existence of a valid insurance contract between Majestic and Underwriters. (Dkt. Nos. 217, 218). Both Parties responded, (Dkt. Nos. 224, 226), and replied, (Dkt. Nos. 227, 228). Underwriters also submitted supplemental authority in June 2026. (Dkt. No. 233).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about

---

1 Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v.*

*Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

And when parties cross-move for summary judgment, as in this case, courts review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Amerisure Ins. v. Navigators Ins.*, 611 F.3d 299, 304 (5th Cir. 2010).

## III. DISCUSSION

The Court first addresses the Parties' respective objections to the summary-judgment evidence before turning to the merits of the cross-motions for summary judgment.

### A. Objections to Summary-Judgment Evidence

#### 1. Majestic's Objections

Majestic objects to the following evidence submitted by Underwriters: (1) portions of Davidson's deposition transcript, (Dkt. Nos. 218-11, 226-4); (2) portions of Buffo's deposition transcript, (Dkt. No. 226-5); (3) the Commercial Insurance Application dated March 28, 2016, (Dkt. No. 218-3); (4) the Property deeds for 102 S. Shaver Street, (Dkt. No. 218-4); (5) emails between Jonathan Bobbs and Larry Davidson, (Dkt. No. 218-5);

(6) Requests for Admission Nos. 13, 14, and 27, (Dkt. No. 218-6); (7) the Commercial Insurance Application dated April 22, 2017, (Dkt. No. 218-8); and (8) emails among Paula Tate, Larry Davidson, and Jonathan Bobbs, (Dkt. No. 218-9). (*See* Dkt. No. 224 at 6); (Dkt. No. 228 at 8).

The Court need not resolve Majestic's objections. As explained below, even considering the portions of Davidson's and Buffo's testimony on which Underwriters relies, that testimony does not create a genuine dispute of material fact. The Court does not rely on the remaining challenged evidence. Majestic's objections are therefore overruled as moot.

### 2. Underwriters' Objections

Majestic submitted a report prepared by a third-party company concerning an inspection of the Property. (Dkt. No. 217-7). Underwriters object to that report. (*See* Dkt. No. 225 at 2).

The Court did not consider or rely on the report in its summary-judgment analysis. Underwriters' objection is therefore overruled as moot.

## B. Summary Judgment

The Court next addresses: (1) whether Majestic has capacity to enforce the Policy and (2) whether the naming discrepancy prevented formation of a valid and enforceable contract between Majestic and Underwriters. Because those rulings resolve the Parties' dispute over Majestic's right to enforce the Policy, the Court does not reach the Parties' arguments regarding reformation or Majestic's judicial-estoppel argument.

**1. Capacity**

The Court first considers whether Majestic has capacity or privity to enforce the Policy. Although Underwriters frames several of its arguments in terms of a lack of a "meeting of the minds," it also contends that Majestic cannot enforce the Policy because Majestic is not the named insured, an assignee, or a third-party beneficiary. (*See* Dkt. No. 218 at 10–18). Texas courts have treated a challenge to a party's privity to enforce a contract as implicating capacity.[2] *Autoficio, LLC v. Cimble Corp.*, No. 4:17-CV-00404, 2017 WL 7731220, at *4 (E.D. Tex. Dec. 11, 2017) ("[A] challenge to party's privity of contract is a challenge to capacity." (quoting *John C. Flood of DC, Inc. v. SuperMedia, LLC*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied))); *Guarantee Co. of N. Am. USA v. Hous. & Land Dev. Corp.*, No. 4:23-CV-01456, 2024 WL 3431339, at *5 (S.D. Tex. May 31, 2024), *report and recommendation adopted*, No. 4:23-CV-01456, 2024 WL 3581978 (S.D. Tex. July 30, 2024) ("Capacity to sue under a contract . . . 'speaks to a party's right to relief for breach of contract.'" (quoting *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 351 (5th Cir. 2021))); *see also United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 591–92 (S.D. Tex. 2015) ("To establish standing to sue for a breach of contract, 'the plaintiff must either be in privity of contract with the defendant or be a third-party beneficiary

---

[2] Whether Majestic possesses a contractual right to relief under the Policy is a merits question distinct from Article III standing. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350–51 (5th Cir. 2021). To the extent Underwriters challenges Majestic's Article III standing, the Court previously considered and rejected that jurisdictional argument. (Dkt. Nos. 107, 128).

entitled to enforce the contract.'" (quoting *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App.—Dallas 2010, no pet.))).

Underwriters did not plead lack of capacity, (Dkt. No. 15), and the Court denied Underwriters leave to add it, (Dkt. No. 154). Accordingly, to the extent Underwriters raises a Rule 9(a) capacity objection, that objection is waived. *MTO Mar. Transp. Overseas, Inc. v. McLendon Forwarding Co.*, 837 F.2d 215, 218 (5th Cir. 1988) ("It is settled law that failure specifically to plead capacity waives the right to object." (citing Fed. R. Civ. P. 9(a))); Fed. R. Civ. P. 9(a)(2) (a party must challenge an opposing litigant's capacity to sue "by a specific denial"); *see also Alvarez v. NES Glob. LLC*, No. 4:20-CV-01933, 2024 WL 4309989, at *4 (S.D. Tex. Sept. 26, 2024) (treating untimely affirmative defenses as waived); *Linsan, Inc. v. Mercantile Thrift Stores, Inc.*, No. 4:20-CV-04343, 2023 WL 3698551, at *1 (S.D. Tex. Mar. 2, 2023) (finding capacity defense waived where the defendant raised capacity for the first time at the summary-judgment stage and did not challenge the plaintiff's capacity in its answer or in any pre-answer motion). That waiver does not, however, dispose of Underwriters' separate merits contention that Majestic lacks a contractual right to enforce the Policy. *See Maxim Crane Works*, 11 F.4th at 350–51. The Court addresses that contention below.

Even if it had preserved the defense, or to the extent Underwriters separately contends that Majestic cannot maintain this action because "Majestic Oil Inc." was not registered as an assumed name, those arguments also fail. (*See* Dkt. No. 217-5). Under Texas law, failing to file an assumed-name certificate does not invalidate a contract; it merely bars the entity from maintaining suit until it files the certificate. *Smith v. CDI*

*Rental Equip., Ltd.*, 310 S.W.3d 559, 564 (Tex. App.—Tyler 2010, no pet.) (citing Tex. Bus. & Com. Code Ann. § 71.201); *see also In re Hoffman*, No. 11-43848, 2012 WL 3070437, at *3 (Bankr. E.D. Tex. July 30, 2012) ("Failure to file an assumed name certificate . . . does not affect the validity or enforceability of contracts entered into by a person doing business under an assumed name." (citing Tex. Bus. & Com. Code Ann. § 71.201(a))).

Underwriters emphasizes that "Majestic Oil Inc." was not listed as an assumed name when the Policy issued or when this suit began. (Dkt. No. 226 at 5–6). But Section 71.201 does not invalidate a contract entered under an unregistered assumed name, and the statutory bar on maintaining suit lasts only until the required certificate is filed. Majestic filed its assumed-name certificate during this litigation. *Smith*, 310 S.W.3d at 565; *see also* Tex. Bus. & Com. Code Ann. § 71.201. Majestic also produced evidence that it had used "Majestic Oil, Inc." in prior dealings with Underwriters. (Dkt. No. 226-4 at 50); *see also Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003) (considering evidence that plaintiff-company used an assumed name in prior dealings with defendant-company).

Accordingly, Underwriters waived any Rule 9(a) capacity objection, and the assumed-name statute does not bar Majestic from maintaining this action. The Court therefore grants Majestic summary judgment as to Underwriters' capacity defense. Whether Majestic has a contractual right to enforce the Policy notwithstanding the discrepancy in the insured's name is a merits question the Court addresses next.

**2. Contract Formation**

The Court next considers Underwriters' argument that the naming discrepancy prevented contract formation because the Parties never reached a meeting of the minds. (Dkt. No. 218 at 10); (Dkt. No. 226 at 9); (Dkt. No. 227 at 8). Majestic responds that mutual assent extends only to a contract's essential terms and that the insured's precise legal name is not one of them. (Dkt. No. 217 at 12); (Dkt. No. 224 at 9–11); (Dkt. No. 228 at 1–2). The Court agrees with Majestic that the naming discrepancy did not prevent formation of a valid contract.

In diversity cases, state contract law governs questions of contract formation. *Vallejo v. Garda CL Sw., Inc.*, 948 F.Supp.2d 720, 726 (S.D. Tex. 2013). Under Texas law, a valid contract requires mutual assent—or a "meeting of the minds"—to the contract's essential terms. *See Huckaba v. Ref-Chem, LP*, 892 F.3d 686, 689 (5th Cir. 2018); *Loeffler v. Lyttle Indep. Sch. Dist.*, 211 S.W.3d 331, 346 (Tex. App.—San Antonio 2006, pet. denied). Which terms are essential depends on the particular contract. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). An essential term is one the parties would reasonably regard as vital to their bargain. *C3 Commc'ns, LLC v. Gigabit Techs., LLC*, No. 14-19-00730-CV, 2021 WL 2965456, at *6 (Tex. App.—Houston [14th Dist.] July 15, 2021, pet. denied).

The Parties agree that the Policy identifies the insured as "Majestic Oil Inc." and never mentions "Majestic Synthetic Oil, LLC." (*See* Dkt. No. 217-2). Even so, the Court is not persuaded that the discrepancy in the insured's legal name prevented mutual assent to the Policy. Texas law recognizes that a misnomer occurs when the correct

parties are involved but one party is incorrectly named. *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 325 (Tex. App.—Dallas 2014, pet. denied). A corporate misnomer does not invalidate a contract where the correct entity's identity is substantially apparent and the other party was not misled by the naming error. *Id.* at 330–34. That principle further supports the conclusion that the discrepancy here did not prevent contract formation. As this Court previously explained, Texas law recognizes that the essential terms of an insurance contract are the insured's payment of premiums and the insurer's assumption of a specific risk. (*See* Dkt. No. 154 at 24 (quoting *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 658 (Tex. 2005) (orig. proceeding))). Here, the insured property's address is likewise essential because it defines the property and risk that Underwriters agreed to insure. *See Paragon Asset Co. Ltd. v. Gulf Copper & Manu. Corp.*, 622 F.Supp.3d 360, 410 (S.D. Tex. 2022) ("In general, the scope and nature of the services to be performed would be an essential term."). Indeed, the Policy ties coverage directly to the buildings and personal property located at the Property address. (*See* Dkt. No. 217-2 at 14). The Policy expressly identifies the insured Property, the premium, and Underwriters' obligation to insure that Property. (Dkt. No. 217-2). The Policy itself—and its undisputed terms—establish a meeting of the minds.

The Parties' conduct confirms the same conclusion. Majestic presented evidence that the Parties outwardly manifested their assent to those essential terms. *See In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (noting that a meeting of the minds is an objective inquiry that turns on the parties' outward manifestations of assent, not their unexpressed subjective intent (citing *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—

San Antonio 1999, pet. denied))); *see also Thomas v. Leyline Publ'g, LLC*, No. 3:24-CV-03061, 2025 WL 1642400, at *6 (N.D. Tex. June 10, 2025) (finding that party assented to an agreement by starting performance). Majestic paid the premiums, and Underwriters accepted them. (Dkt. No. 217-4 at 31). Those undisputed facts objectively demonstrate assent to the Policy's essential terms.

Underwriters presented no evidence[3] sufficient to create a genuine dispute as to whether "the insured's legal name or particular corporate form played any role in [its] decision to insure the building or affected the Parties' actual, real-world business relationship in any meaningful way." (Dkt. No. 154 at 22–23). And it identifies no legal authority establishing that the naming discrepancy prevented contract formation. *See also Mountain View Health & Rehab. Ctr., Inc. v. Keele*, No. 08-23-00033-CV, 2024 WL 3034878, at *5 (Tex. App.—El Paso June 17, 2024, no pet.) ("The Premises Parties argue they could not find any authority holding that 'for an arbitration agreement to be enforceable the employee must subjectively understand the exact name of her employer.' Nor could

[3] Underwriters submitted deposition testimony from Buffo, (Dkt. No. 226-5), and Davidson, (Dkt. No. 226-4), in an attempt to show that the insured's legal name played a role in the decision to insure the Property. For instance, Buffo stated that a naming discrepancy "could materially change the policy language that's put in force and the amounts of coverage that are given per different lines." (Dkt. No. 226-5 at 50). Similarly, Davidson said he "strongly suspect[ed]" that he would have cancelled the Policy had the naming discrepancy been discovered. (Dkt. No. 226-4 at 33). Neither witness testified that the naming discrepancy actually affected the issuance or terms of this Policy, that Underwriters believed it was insuring a different entity, or that Underwriters was misled by the name appearing on the Policy. Their testimony about what "could" have occurred or what Davidson "strongly suspect[ed]" would have occurred is too speculative to create a genuine dispute of material fact. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).

we.")). No genuine dispute therefore exists as to whether the Parties objectively manifested assent when they entered the Policy.

#### 3. Judicial Estoppel

Finally, Majestic argues that Underwriters is judicially estopped from contending that the Policy is not a binding contract. (Dkt. No. 217 at 18–20). Because the Court concludes that the naming discrepancy did not prevent formation of a valid and enforceable contract between Majestic and Underwriters, the Court need not reach Majestic's judicial-estoppel argument.

## IV. CONCLUSION

Considering the foregoing analysis, the Court **GRANTS** Majestic's Motion for Partial Summary Judgment, (Dkt. No. 217), and **DENIES** Underwriters' Motion for Summary Judgment regarding Contract Formation, (Dkt. No. 218).

This Order resolves the Parties' dispute concerning Majestic's capacity to enforce the Policy and whether the naming discrepancy prevented formation of a valid and enforceable contract. Those issues will not be submitted to the jury.

It is SO ORDERED.

Signed on September 30, 2026.

Drew B Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**